IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ZIAD BENTAHAR, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-1551 |
| TOWSON UNIVERSITY, | * | |
| Defendant. | * | |
| | * | |
| ***| | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Towson University's ("Towson") Motion for Summary Judgment (ECF No. 19). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant the Motion (ECF No. 19).

### I.   BACKGROUND

**A.   Factual Background**

Plaintiff Ziad Bentahar ("Dr. Bentahar") is a Muslim man from Morocco who identifies his race as North-African and Arab. (Compl. ¶ 6, ECF No. 1). He was born in Morocco and has dual Moroccan and American citizenship. (Bentahar Dep. 8:18–21, 9:2–5, ECF No. 19-5). Towson University ("Towson") is a public institute of higher education and consists of seven colleges, including the College of Liberal Arts ("College"). (Def.'s Mem. Supp. Mot. Summ. J. ["Mot."] at 15, ECF No. 19-1). The Dean of the College is Chris Chulos ("Dean Chulos"). (Chulos Decl. ¶ 1, ECF No. 19-4). The current Chair of the

Department of Language, Literatures, and Culture ("Department") is Jennifer Ballengee ("Dr. Ballengee"), and the prior Chair was Margherita Pampinella ("Dr. Pampinella"), who served from 2019 until 2023. (Id. ¶ 4).

On or about August 1, 2014, Dr. Bentahar was hired by Towson as an Associate Professor in the College of Liberal Arts Department of Language, Literatures, and Culture. (Bentahar Dep. 11:10–17). From 2014 through 2019, Dr. Bentahar "received positive and outstanding performance reviews" from his supervisor and then Department Chair, Dr. Pampinella, and Professor Sainson, Coordinator of the Department's French Program. (Compl. ¶¶ 8–9). He published numerous peer-reviewed articles "on topics related to language and culture in North Africa," and served on various committees at Towson, including the CLA Merit Committees, Appointment, Rank & Tenure (ART) Document Revision Committee, and several Diversity, Equity & Inclusion initiatives. (Id. ¶ 7). In 2020, he was awarded tenure. (Bentahar Dep. 11:22–12:2).

On or around April 5, 2019, Dr. Bentahar served as a "member of a hiring committee for a French lecturer position," during which he expressed concerns about "the lack of diversity within the French curriculum." (Compl. ¶ 10). Specifically, Dr. Bentahar stated that "the committee was rejecting French professors due to their national origin." (Id.). Dr. Bentahar again shared these views while serving as a member of the hiring committee during the fall 2019 and spring 2020 semesters, which he alleges were not well-received. (Id. ¶¶ 10–11, 13, 14).

On or about June 7, 2021, Dr. Bentahar filed a complaint of discrimination with the Office of Inclusion & Institutional Equity ("OIIE") at Towson, alleging discrimination and

2

a hostile work environment after he was "not given the opportunity to have his name listed for nomination" in an election for the Promotions and Tenure Committee position. (June 2021 OIIE Summary Investigative Report ["June 2021 OIIE Report"] at 2, ECF No. 19-10).[1] According to Dr. Bentahar, after he made this complaint, he was subjected to "on-going harassment in [sic] retaliation," (Compl. ¶¶ 13–14).

Dr. Bentahar alleges that the retaliation included three disciplinary letters he received from his Towson supervisors. (See Pl.'s Mem. Opp'n Mot. Summ. J. ["Opp'n"] at 14–20, ECF No. 28-1). First, Department Chair, Dr. Pampinella issued a Letter of Concern to Dr. Bentahar, on November 1, 2021, for what she described as a "pattern of lurking" during Department meetings, Dr. Bentahar's repeated failure to respond to colleagues concerning Department business, and his failure to attend Department meetings. (Nov. 2021 Letter of Concern at 2–3, ECF No. 19-19; Pampinella Dep. 62:12–63:2, ECF No. 19-8). Next, Dr. Bentahar received a Letter of Warning from Dr. Pampinella on February 14, 2022, for his continued failure to respond to requests for information and other Department communications. (Feb. 2022 Letter of Warning at 2, ECF No. 19-23). And finally, Dr. Bentahar was issued a Letter of Censure on June 9, 2022, by the College Dean, Dean Chulos, for again failing to respond to Department requests for information.

---

[1] Dr. Bentahar filed a second OIIE Complaint on November 12, 2022, against Towson's Provost, Interim Provost, Dean Chulos, and Dr. Pampinella, in which he alleged discrimination based on race, national origin, or sex, as well as retaliation. (Nov. 2022 OIIE Summary Investigative Report at 2, ECF No. 21). At the conclusion of this investigation, the OIIE determined that Dr. Bentahar's allegations were not supported by a preponderance of the evidence. (Id. at 29).

3

(June 2022 Letter of Censure at 2, ECF No. 19-24). In his letter, Dean Chulos characterizes Dr. Bentahar's conduct as insubordinate. (Id.).

Dr. Bentahar also claims that Towson retaliated against him by denying him a promotion and other opportunities for career advancement. (Compl. ¶¶ 18, 21, 24). Around August of 2021, Dr. Bentahar informed Dr. Pampinella, Chair of the Department's Promotions, Tenure and Reappointments Committee ("Promotions Committee"), that he intended to seek promotion to full professor. (Pampinella Dep. 13:8–14). Towson's policies and procedures related to the promotion of faculty members are set forth in the Policy on Appointment, Rank and Tenure of Faculty ("ART Policy"). (Chulos Decl. ¶ 5). The Policy provides that "[t]he appointee shall have a minimum of ten years of full-time University/college faculty experience." (Policy on Appointment, Rank and Tenure of Faculty ["ART Policy"] at 15, ECF No. 19-13). Exceptions to the ten-year requirement "may be made for faculty who have attained national distinction for comparable professional activity or research." (Id.).

On October 7, 2022, the Promotions Committee voted unanimously in opposition to Dr. Bentahar's request for promotion, primarily because he neither met the years of service requirement nor demonstrated extraordinary circumstances. (Jan. 2023 Letter from Dean Chulos to Provost Perreault ["Jan. 2023 Letter from Chulos to Perreault"] at 2, ECF No. 19-17; April 2023 Letter from Provost Perreault to Dr. Bentahar at 2, ECF No. 19-18; Pampinella Dep. 17:3–10). The Provost and Interim President of the University concurred with the Committee's recommendation against early promotion. (April 2023 Letter from Provost Perreault to Dr. Bentahar at 2).

Last, Dr. Bentahar alleges that he experienced retaliation when his supervisor filed a discrimination complaint against him. (Compl. ¶ 21). On February 20, 2023, Dr. Pampinella filed an OIIE complaint alleging that Dr. Bentahar engaged in retaliatory harassment against her. (Pampinella Dep. 85:2–4; OIIE Discrimination Complaint Investigative Report ["OIIE Investigative Report"] at 17, ECF No. 23). At the conclusion of the OIIE's investigation, which involved interviews with several witnesses, the OIIE found that Dr. Bentahar engaged in retaliatory harassment against Dr. Pampinella and created an abusive workplace environment. (Id.).

To date, Dr. Bentahar is currently employed at Towson, where he teaches French and Arabic courses. (Bentahar Dep. 12:5, 50:4–6).

**B.   Procedural History**

On December 16, 2021, Dr. Bentahar filed a Charge of Discrimination against Towson with the Maryland Commission on Civil Rights ("MCCR"),[2] alleging discrimination based on his religion, national origin, race, and retaliation. (MCCR Charge of Discrimination at 2, ECF No. 19-22).[3] Dr. Bentahar obtained a Notice of Right to Sue from the U.S. Department of Justice, Civil Rights Division, on March 9, 2023. (Compl. ¶ 4). He initiated this action against Towson on June 7, 2023, alleging a single count of

---

[2] Charges of Discrimination filed with the MCCR are automatically cross-filed and sent to the EEOC for dual or cross-filing purposes. Bolden v. CAEI, Inc., No. JRR-21-2295, 2023 WL 5938605, at *3 n.6 (D.Md. Sept. 12, 2023).

[3] Citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (Id. at 9). Dr. Bentahar seeks monetary and injunctive relief. (Id. at 10).

Towson answered the Complaint on July 14, 2023. (ECF No. 4). After engaging in discovery, Towson filed the instant Motion for Summary Judgment on July 22, 2024. (ECF No. 19). Dr. Bentahar filed an Opposition on September 18, 2024, (ECF No. 28), and Towson filed a Reply on November 1, 2024, (ECF No. 31).

## II. DISCUSSION

### A. Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials[,]" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.Proc. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.Proc. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material

fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (quoting Anderson, 477 U.S. at 247).

B.  **Analysis**

Towson contends that it is entitled to summary judgment as to Dr. Bentahar's retaliation claim under Title VII (Count I).[4] At bottom, the Court agrees and will grant Towson's Motion.

Title VII prohibits an employer from discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such "individual's race, color, religion . . . or national origin[.]" 42 U.S.C. § 2000e-2. Title VII further forbids discrimination based on an employee's "opposition to conduct made unlawful by Title VII or participation in any Title VII investigation, proceeding or hearing." Perkins v. Int'l Paper Co., 936 F.3d 196, 205–06 (4th Cir. 2019) (citing 42 U.S.C. § 2000e-3).

Where a plaintiff does not have direct evidence of discrimination or retaliation under Title VII, courts generally apply the McDonnell Douglas burden-shifting framework. See, e.g., Rosero v. Johnson, Mirmiran & Thompson, Inc., No. GLR-21-588, 2023 WL 5884274, at *3 (D.Md. Sept. 11, 2023), aff'd as modified, No. 23-2041, 2024 WL 773586 (4th Cir. 2024). This is a three-part framework. Id. First, an employee must establish a prima facie case of retaliation. See id. Second, the burden shifts to the employer to produce evidence to show that he had a legitimate and non-discriminatory reason for his actions. Id. Third, the burden shifts back to employee to establish that his employer's non-discriminatory explanation was merely pretext for retaliation. Id. Because Dr. Bentahar

---

[4] Count I is the sole count of the Complaint. (Compl. at 9–10).

8

does not have direct evidence of discrimination, the Court will analyze his claim under the McDonnell Douglas framework. (See Opp'n at 21–28) (attempting to make out a prima facie case).

### 1. Prima Facie Case

The Court turns first to step one of the McDonnell Douglas framework. To establish a prima facie case for retaliation, a plaintiff must show that: "(1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." Rodgers v. Eagle All., 586 F.Supp.3d 398, 445 (D.Md. 2022) (quoting Okoli v. City of Baltimore, 648 F.3d 216, 223 (4th Cir. 2011)). The burden at this stage is not onerous, and meeting it in effect creates a presumption that the employer unlawfully retaliated against the employee. See Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 127 (4th Cir. 2021).

Towson only contests the third factor. (Mot. at 15). There is no dispute that Dr. Bentahar filed two OIIE complaints and an MCCR Charge of Discrimination against Department representatives,[5] that Department representatives issued disciplinary letters and denied his request for a promotion, and that his supervisor filed an OIIE complaint

---

[5] "Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" Landino v. Sapp, 520 F.App'x. 195, 198 (4th Cir. 2013); Civil Rights Act of 1964 § 704, 42 U.S.C.A. § 2000e-3(a). In both his OIIE complaints and the MCCR Charge of Discrimination, Dr. Bentahar alleges discrimination based on religion, national origin, and race. (June 2021 OIIE Summary Investigative Report at 2, ECF No. 19-10; Nov. 2022 OIIE Summary Investigative Report at 151, ECF No. 28-2; MCCR Charge of Discrimination at 2, ECF No. 19-22). Thus, the Court finds that Dr. Bentahar engaged in protected activity.

against him for harassment. (See id. at 16–17.). Thus, the only question at the prima facie stage is whether Dr. Bentahar can demonstrate a causal connection between any of his Title VII protected activities and his employer's adverse actions.

Towson argues that Dr. Bentahar cannot satisfy the third factor of his prima facie case because there is no evidence of a "but-for" causal link between his protected activity and "any subsequent employment action." (Mot. at 15 (cleaned up)). But to establish a causal connection, a plaintiff need not prove "but-for" causation, as Towson suggests. Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 251 (4th Cir. 2015). Rather, he only needs to: (1) provide evidence that "suggests that the adverse action occurred because of the protected activity," or (2) show that the adverse act occurred close in time to the protected activity. Roberts, 998 F.3d at 123 (4th Cir. 2021). In this case, Dr. Bentahar asserts that he satisfies the temporal proximity factor. (Opp'n at 23). But even if the Court assumes Dr. Bentahar demonstrated a prima facie case of retaliation, he fails to show that Towson's legitimate, non-discriminatory reasons for its adverse actions were a pretext for retaliation, and thus his claim will not survive summary judgment.

### 2. Legitimate Non-Discriminatory Reasons

The second step of the McDonnell Douglas framework requires the Court to consider whether the employer has produced evidence of nondiscriminatory reasons for its actions. Rosero, 2023 WL 5884274, at *3. The employer's burden at this stage is low as it is merely a burden of production, not persuasion. See Holley v. N.C. Dep't of Admin., N.C., 846 F.Supp.2d 416, 428 (E.D.N.C. 2012) (citing St. Mary's Honor Ctr. v. Hicks, 509

U.S. 502, 506–07 (1993)). For the reasons discussed below, the Court finds that Towson has met its burden.

First, with respect to the disciplinary letters, Towson cites evidence that Bentahar's demeanor and behavior were unsatisfactory and unprofessional. (Mot. at 22, 24; Pampinella Dep. 62:12–63:2, ECF No. 19-8; Nov. 2021 Letter of Concern at 2; Feb. 2022 Letter of Warning at 2; June 2022 Letter of Censure).[6] Job performance is widely recognized as a valid, "non-discriminatory bas[i]s for any adverse employment decision." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996).

Second, as to the denial of Dr. Bentahar's promotion to the rank of full professor, Towson cites its internal policies and letters from Department representatives to show that Dr. Bentahar "sought promotion prematurely." (Mot. at 21; ART Policy at 15; Jan. 2023 Letter from Chulos to Perreault at 2; April 2023 Letter from Provost Perreault to Dr. Bentahar at 2).[7] Finally, as to Dr. Bentahar's argument that his supervisor, Dr. Pampinella, filed an unwarranted OIIE complaint against him in retaliation for his own complaint

---

[6] For example, Dr. Pampinella testified that she issued the November 2021 Letter of Concern "because of Dr. Bentahar's pattern of repeated failure to respond to colleagues concerning Department business, and his failure to attend Department meetings." (Mot. at 22, 24; Pampinella Dep. 62:12–63:2). Specifically, the letter notes that Dr. Bentahar did not meaningfully participate in several virtual meetings, nor notify his superiors regarding excused absences. (Nov. 2021 Letter of Concern at 2).

[7] Under Towson's Policy on Appointment, Rank and Tenure of Faculty, faculty members are required to have a "minimum of ten years of full-time University/college faculty experience" to be eligible for promotion. (ART Policy at 15, ECF No. 19-13). The only exception is for faculty who have "attained national distinction." (Id.). Put simply, Towson argues that because Dr. Bentahar had not yet completed his tenth year of college faculty experience nor attained national distinction, his promotion request was denied. (Mot. at 21).

11

against her, (Opp'n at 27–28), Towson proffers evidence of the investigation report to show that Dr. Bentahar harassed Dr. Pampinella, and "created an abusive workplace environment." (Def.'s Reply Supp. Mot. Summ. J. ["Reply"] at 15, ECF No. 31).[8] Accordingly, the Court finds that Towson produced sufficient evidence of non-discriminatory purposes to shift the burden back to Dr. Bentahar.

### 3. Evidence of Pretext

Turning to the third and final step under McDonnell Douglas, the burden now shifts back to Dr. Bentahar to "produce evidence sufficient to create a material issue of fact" as to whether Towson's alleged reasons for its adverse actions against him were not its true reasons, but rather a pretext for retaliation. Wannamaker-Amos v. Purem Novi Inc., No. 23-1568, 2025 WL 78324 (4th Cir. Jan. 13, 2025). To show that Towson's proffered reasons are pretextual, Dr. Bentahar must produce affirmative evidence of either: (1) a discriminatory motive; or (2) affirmative evidence that Towson's proffered explanation is simply unworthy of credence. Blankenship v. Buchanan Gen. Hosp., 140 F.Supp.2d 668, 674 (W.D.Va. 2001).

For the reasons discussed below, the Court finds that Dr. Bentahar cannot meet his burden.

---

[8] Specifically, the OIIE investigation uncovered "at least [ten] instances of correspondences, several of which were distributed broadly to faculty," where Dr. Bentahar restated "unsubstantiated allegations" and made "unprofessional and disparaging remarks" about Dr. Pampinella and her abilities as Chair. (OIIE Discrimination Complaint Investigative Report ["OIIE Investigative Report"] at 17, ECF No. 23; Mot. at 17). Ultimately the investigation, which involved interviews with multiple witnesses, concluded that Dr. Bentahar "engaged in retaliatory harassment" and "severe and/or pervasive conduct" towards Dr. Pampinella. (Id. at 6–12, 16; Mot. at 13).

### a. Disciplinary Letters

Dr. Bentahar argues that Towson's proffered reason for issuing the disciplinary letters was pretextual because: (1) the November 2021 Letter of Concern was issued in violation of the Federal Gradual Intervention Guidelines ("Federal Guidelines"), (Opp'n at 25); (2) the underlying allegations of the February 2022 Letter of Warning were "unfounded," (Opp'n at 26; Feb. 2022 Letter from Dr. Bentahar to Dr. Pampinella at 146, ECF No. 28-2; Bentahar Aff. ¶ 8); and (3) the June 2022 Letter of Censure was issued in connection to his internal OIIE complaint, (Bentahar Aff. ¶ 8). The Court finds that the evidence cited by Dr. Bentahar does not create a dispute of material fact as to whether the disciplinary letters were issued as a pretext for retaliation.

### i. November 2021 Letter of Concern

As the Court discussed earlier, Towson proffered evidence of a nondiscriminatory purpose to justify its November 1, 2021 Letter of Concern by citing to the letter itself and Dr. Pampinella's deposition testimony. (Nov. 2021 Letter of Concern at 2; Pampinella Dep. 62:12–63:2). This evidence reveals that the November letter was issued "because of Dr. Bentahar's pattern of repeated failure to respond to colleagues concerning Department business, and his failure to attend Department meetings." (Mot. at 22; Pampinella Dep. 62:12–63:2). Dr. Bentahar's efforts to establish pretext by arguing that the November 1, 2021 Letter of Concern violated the Federal Guidelines fails. Even if the Letter violated the Guidelines, such a violation does not cast doubt on the truth of Towson's proffered reason for issuing the letter in the first place—Dr. Bentahar's unprofessional and

13

unsatisfactory conduct, (id.), nor does it establish a discriminatory motive. Thus, the Court finds Dr. Bentahar's argument insufficient to create a dispute of material fact as to pretext.

### ii. February 2022 Letter of Warning

Dr. Bentahar's argument that the February 2022 Letter of Warning was unfounded similarly fails to create a genuine dispute of material fact as to pretext because Dr. Bentahar only provides as evidence his letter to Dr. Pampinella[9] and his affidavit. (Feb. 2022 Letter from Dr. Bentahar to Dr. Pampinella at 146; Bentahar Aff. ¶ 8). Courts generally "consider self-serving opinions without objective corroboration not significantly probative," because it is the perception of the decisionmaker that is relevant, not the self-assessment of the employee. Evans v. Techs. Appication & Srtv. Co, 80 F.3d 954, 960–62 (4th Cir. 1996); see Goldberg v. B. Green & Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988) (plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact"). Therefore, because Dr. Bentahar fails to provide any objective evidence to support his argument, the Court finds that his letter to Dr. Pampinella and his affidavit are insufficient to show that the Letter of Warning was issued as pretext for retaliation.

### iii. June 2022 Letter of Censure

Finally, Dr. Bentahar appears to argue that the Letter of Censure from Dean Chulos was issued in retaliation for his OIIE complaint against Department representatives by

---

[9] In his letter to Dr. Pampinella, Dr. Bentahar states that her "accusations [are] demonstrably absurd." (Letter from Dr. Bentahar to Dr. Pampinella at 146, ECF No. 28-2).

citing to Dean Chulos' testimony. (Opp'n at 26; Chulos Dep. 38:4–39:5, ECF No. 28-2). But this argument is unsupported by the record. Dean Chulos' testimony reveals that part of the basis for imposing discipline on Dr. Bentahar was that he shared the findings of a confidential OIIE report "with the entire college." (Chulos Dep. 38:4–39:5). Courts in this circuit have held that the disclosure of confidential information is a legitimate, non-retaliatory reason for adverse employment action against an employee. See, e.g., Shoaf v. Kimberly-Clark Corp., 294 F.Supp.2d 746, 757 (M.D.N.C. 2003) (finding that employer's termination of employee for the disclosure of confidential personnel information was legitimate and non-retaliatory); Zanders v. National R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir. 1990) (finding that lawsuit filed by employer against employee to enforce contractual agreement to protect confidential information from improper and unauthorized disclosure was a legitimate, non-retaliatory reason for such adverse employment action against employee). Because the disclosure of confidential information is a legitimate and proper reason for Towson to issue discipline, the Court finds that Dr. Bentahar fails to create a dispute of material fact as to pretext based upon Dean Chulos' testimony. Accordingly, the Court finds no genuine dispute of material fact as to Towson's proffered reasons for its disciplinary letters.

      **b.**    **Denial of Promotion**

Dr. Bentahar contends that his qualifications, including the quality and quantity of his publications, show that Towson's proffered reason for denying his promotion was a pretext for retaliation. (Opp'n at 27). In support of this argument, he cites his affidavit, (Bentahar Aff. ¶ 7), and what appear to be performance reviews from his supervisors where

he received high praises for his excellent work, (Letters of Commendation at 107–121, ECF No. 28-2). In his affidavit, Dr. Bentahar "contend[s] that excellence in research exceeding the department's normative baseline should be sufficient for considering promotion before completing ten years of service." (Bentahar Aff. ¶ 7). But this is not for Dr. Bentahar to decide. A plaintiff "cannot establish pretext by relying on criteria of h[is] choosing when the employer based its decision on other grounds." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 271 (4th Cir. 2005). Towson produced evidence that Bentahar's promotion was denied because he did not have the requisite years of experience required by its policy. (Mot. at 21; see ART Policy at 15; Jan. 2023 Letter from Chulos to Perreault at 2). Dr. Bentahar cannot demonstrate pretext by relying on his excellence in research when his employer based its decision on other grounds.

To be sure, Towson's promotion policy provides an exception to the ten-year requirement "for faculty who have attained national distinction for comparable professional activity or research." (Id.). A plaintiff alleging failure to promote can establish pretext by showing, among other things, that he was better qualified than those promoted by the defendant-employer. Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 259 (4th Cir. 2006). Here, Dr. Bentahar baldly asserts that the "quality and quantity of [his] publications surpass those of colleagues who were promoted to full professor." (Bentahar Aff. ¶ 7). Even if that were the case, the record reflects that none of the professors Dr. Bentahar compares himself to were promoted to full professor based on exceptional service—in other words, they all satisfied the ten-year service requirement. (Id.; Pampinella Dep. 18:21–22). Indeed, Dr. Bentahar even acknowledged that he was not

16

aware of any other professor in the Department who was promoted prior to completing ten years of service. (Bentahar Dep. 37:20–38:2). Although Towson's promotion policy makes allowances for early promotion, the evidence suggests that Towson generally does not apply this option when considering promotion requests.[10] Thus, the record fails to suggest that the denial of Dr. Bentahar's was tainted by any retaliatory or discriminatory motive. Accordingly, the Court finds no genuine dispute of material fact exists as to whether Towson's proffered legitimate and non-discriminatory reason for denying his promotion was pretextual.

        c.      **<u>OIIE Complaint against Dr. Bentahar</u>**

Dr. Bentahar argues that Towson's non-discriminatory reason for the OIIE complaint against him[11] is unworthy of credence. (See Opp'n at 29). To prove this, he relies on his own affidavit and the testimony of Dr. Ballengee, the current Chair of the Department. (Bentahar Aff. ¶ 9; Ballengee Dep. 13:2–14:4, ECF No. 28-2). In his affidavit, Dr. Bentahar maintains that he "[has] not harassed Dr. Pampinella." (Bentahar Aff. ¶ 9). Rather, he argues that Dr. Pampinella's complaint was made in "bad faith," because it was filed the same day that he met with her to "inquire[] about the possibility of becoming

---

[10] Provost Perreault explained that while she served as the University's Interim President, no other faculty member sought early promotion via the ten-year exception. (Perreault Dep. 14:2–6, ECF No. 19-16). Dr. Pampinella similarly testified that such an exception would involve "a Nobel Prize, a Pulitzer award, something of that kind" and no faculty member was promoted early to full professor based on the ten-year exception while she was employed at the University. (Pampinella Dep. 18:21–22).

[11] Towson's legitimate non-discriminatory reason for the OIIE complaint against Dr. Bentahar is that Dr. Bentahar harassed Dr. Pampinella. (Mot. at 13; Def.'s Reply Supp. Mot. Summ. J. ["Reply"] at 15, ECF No. 31; Feb. 2023 OIIE Discrimination Complaint Investigative Report at 6–12, 17, ECF No. 23).

language coordinator for the French program." (Id.). In Dr. Ballengee's testimony, she states that she overheard Dr. Pampinella "refer negatively" and "speak in a hostile way about Dr. Bentahar" behind his back. (Ballengee Dep. 13:2–14:4).

Dr. Bentahar's argument that Dr. Pampinella filed her OIIE complaint in bad faith is unsupported by the record. Apart from his own affidavit, in which he claims that Dr. Pampinella filed her complaint "as a form of 'know your place aggression,'" Dr. Bentahar proffers no evidence to suggest that the OIIE complaint was filed with a discriminatory or retaliatory motive. (See Bentahar Aff. ¶ 9). "Title VII does not protect employees from all unfair or unprofessional treatment, but only from intentional discrimination on the basis of 'certain, discreet classifications.'" Porter v. Nat'l Con-Serv, Inc., 51 F.Supp.2d 656, 660 (D.Md. 1998) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1109 (8th Cir. 1998)) (emphasis added). Further, because Dr. Bentahar fails to provide any objective evidence to support his argument that he did not harass his supervisor, the Court finds his self-serving affidavit insufficient to create a genuine issue of material fact as to his conduct towards Dr. Pampinella. Goldberg, 836 F.2d at 848 (4th Cir. 1988) (Plaintiff's own opinions and conclusory allegations do not have sufficient "probative force to reflect a genuine issue of material fact").

As it relates to Dr. Ballengee's testimony that Dr. Pampinella made hostile and negative remarks about Dr. Bentahar, the Court again notes that Title VII does not protect Dr. Bentahar from all unfair treatment, including being "talked about" behind his back, but "only from intentional discrimination on the basis of 'certain, discreet classifications.'" Porter, 51 F.Supp.2d at 660 (internal quotation marks). To be sure, "isolated statements

18

can constitute evidence of discrimination," but only when they are "contemporaneous to [an] adverse employment action." Lee v. Mkt. Am., Inc., No. WLO-18-1046, 2022 WL 475326, at *8 (M.D.N.C. Feb. 16, 2022), aff'd, No. 22-1297, 2022 WL 4128849 (4th Cir. Sept. 12, 2022); id. (holding that decisionmaker's negative statements about plaintiff's cultural differences were insufficient evidence of pretext because they were not made contemporaneous to the adverse employment action). Here, there is nothing in the record to suggest that Dr. Pampinella's comments were made with a discriminatory motive, that they were made in close temporal proximity to the filing of her complaint, nor that they were made in retaliation for Dr. Bentahar's OIIE complaint. Therefore, the Court finds that Dr. Bentahar fails to show that Towson's proffered reason for filing her complaint was actually pretext for retaliation.

No dispute of material fact exists as to any of Towson's proffered reasons for its adverse employment actions against Dr. Bentahar. The Court finds that Towson prevails as a matter of law and will grant the Motion for Summary Judgment.

### III.   CONCLUSION

For the foregoing reasons, the Court grants Towson's Motion for Summary Judgment (ECF No. 19). A separate Order follows.

Entered this 11th day of February, 2025.

                                            /s/
                              George L. Russell, III
                              Chief United States District Judge